## No. 2898.

## R. L. SIMMONS *v.* THE STATE.

1. PRACTICE—CONTINUANCE—NEW TRIAL.—An application for continuance is properly refused if it fails to disclose legal diligence to secure the absent witnesses for whom it was asked. But, on the motion for new trial, in reviewing the matter set forth in the application, the trial court should construe the absent testimony in the light of the proof adduced at the trial, and if, so construed, the absent testimony appears material to the defense, and probably true, the new trial should be awarded, notwithstanding the failure of diligence to procure the testimony at the trial.

2. SAME—FACT CASE.—See the statement of the case for evidence set forth in an application for a continuance which, in view of the evidence at the trial, is *held* material and probably true, and to have entitled the defendant to a new trial, notwithstanding the continuance, because of the want of diligence to procure the absent testimony, was properly refused.

APPEAL from the District Court of McLennan. Tried below before the Hon. Eugene Williams.

The indictment in this case was filed in the district court of McLennan county, on the twenty-second day of October, 1887. It charged the appellant with the offense of perjury, alleging that he committed the said offense upon the trial in the district court of the case of Nettie Hough Simmons v. Newton C. Simmons, for divorce, on the nineteenth day of October, 1887. The perjury assigned in the indictment was that, on the trial of the

said divorce suit, the appellant, under oath, falsely testified that, on the ninth day of September, 1887, in the peach orchard on the premises of the said Nettie Hough Simmons, at the instance and request of the said Nettie Hough Simmons, he, the appellant, had carnal knowledge of her, the said Nettie Hough Simmons. The trial, which was had on the eleventh and twelfth days of May, 1888, resulted in the conviction of the appellant, and his punishment was assessed at a term of five years in the penitentiary.

Z. T. Beasley was the first witness for the State. He testified that he was the clerk of the district court of McLennan county, and officiated as such clerk at the October term, 1887, when the divorce suit of Nettie Hough Simmons v. Newton C. Simmons was tried. Witness administered the oath to the file of witnesses first presented by the parties to that suit, but not to other witnesses who were sworn from time to time during the progress of the trial. The defendant was a witness and testified upon the trial of the said cause, but witness was unable to say that he administered the oath to him, unless he was one of the first file of witnesses presented to be sworn. The witness did not know the defendant at that time, and was unable to say whether or not he was one of the file of witnesses to whom he administered the oath. At this point the State, through this witness, introduced in evidence the original and supplemental petitions of Nettie Hough Simmons, and the original and supplemental answers and cross petition of Newton C. Simmons in the cause of Nettie Hough Simmons v. Newton C. Simmons, for divorce, and also the decree of the court reciting the verdict of the jury in favor of the plaintiff, and awarding her a divorce upon her petition.

Mrs. Nettie Hough, late Nettie Hough Simmons, was the next witness for the State. She testified that she knew the defendant, who was the son of her late husband, Newton C. Simmons. The divorce suit of Simmons v. Simmons, wherein the witness was plaintiff and Newton C. Simmons was defendant, was tried in the district court of McLennan county, in October, 1887. The defendant testified, on the trial of that case, as a witness for his father, in the cross bill against the witness. The witness was present at that trial, and saw and heard the defendant take the oath as a witness as aforesaid, and heard all of his testimony on the trial of that case. On the said trial the defendant testified that he reached the place of the witness near Bruceville,

McLennan county, Texas, about thirty minutes before sun down on the evening of September 9, 1887; that he found no person other than the witness at the house at that time; that, after remaining in the room with witness until between sun down and dark, the witness proposed that he and she should go into the peach orchard and get some peaches; that he accepted the invitation and went with the witness into the said orchard; that, a few minutes after they reached the said orchard, the witness requested him to act as a husband to her, and laid down on the ground, when he got on top of her and had carnal knowledge of her; that he pressed his face to witness's face, and his belly to the witness's belly, and "did it" to witness, and that he, the defendant, and the witness continued thus in carnal embrace until Tom Smith came up and discovered them in the copulative act—all of which statements were absolutely and utterly false, and so known to be false by the defendant when he made the same as testimony on the said trial. The defendant was not on the witness's premises on the said September 9, 1887, and had not been for at least ten days preceding the said September 9. On the tenth of the said September, the witness and her then husband (the father of defendant) separated, and witness went to Waco on the eleventh day of the same month. Defendant was not at the witness's house nor on her place at any time on the said September 9. Miss Annie Abernathy visited the witness on that day, reaching her house about nine o'clock in the morning, and remaining until after dinner. Mrs. Whaley and Mrs. Leavett spent that day with the witness on her said place, arriving quite early in the morning and remaining until nearly sun down. Mrs. Whaley and Mrs. Leavett, leaving the witness's house, went direct to the Bruceville road by the way of the Abernathy house, which was on the witness's place, and took the direct road to Bruceville. Just as those two ladies left the witness's house, the witness saw N. C. Simmons, her then husband, coming towards the house through Doctor Bruce's field. He reached the house between five and ten minutes after Mrs. Whaley and Mrs. Leavett left. It was then about, or perhaps not quite, sun set. In his testimony on the trial of the divorce case, the defendant testified that he came to witness's house direct from Bruceville, reaching the house about thirty minutes before sun down, and that, in going to the house, he traveled the main Bruceville road, and that he met no person en route. If he had in fact so come to the witness's place he

would have necessarily passed the Abernathy house. As a matter of fact and truth, the defendant was not on the witness's place on either the day or night of the said September 9, and had not been on that place for at least ten days prior to the said date. The witness did not know whether or not the defendant was absent from McLennan county before the trial of the divorce case. She did not see him subsequent to the trial for divorce until after his arrest upon this charge. No person other than the witness was on the witness's place after the departure of Mrs. Whaley and Mrs. Leavett, until the arrival of N. C. Simmons a few minutes later. The witness and N. C. Simmons lived together as man and wife about four months. The witness's first husband, Mr. Hough, died nearly two years before the marriage of the witness and N. C. Simmons. Witness and Mr. Hough were married in 1879, and they lived together as man and wife until 1885. The witness testified on the trial of the divorce suit instituted by her against N. C. Simmons, and stated all that she knew about her property. The witness was once arrested. She was arrested in Marlin, and convicted for an aggravated assault upon a woman, and was confined in jail twenty-one days, being too poor to discharge the fine assessed against her.

R. H. Kingsbury was the next witness for the State. He testified that he was an attorney at law. He was present in the court room on the trial of the divorce suit of Simmons v. Simmons, in October, 1887, and heard the testimony delivered by the defendant on that trial as a witness for the respondent. The oath was administered to the defendant by the clerk of the district court, whereupon the defendant testified that he went to the residence of his father and Mrs. Hough (then his father's wife) on the evening of September 9, 1887, and that he and Mrs. Hough had carnal intercourse with each other about dark on that day, in the peach orchard. The witness did not recollect what, if anything, the defendant said in his said testimony about leaving Bruceville to go to Mrs. Hough's residence. To the best of the witness's recollection, the defendant used the expression: "She and I went through the performance," and that it was about dark when they did so.

J. P. Wood testified, for the State, that he was a member of the jury that tried the divorce suit of Simmons v. Simmons in the district court of McLennan county, in October, 1887. The defendant testified as a witness for the respondent on that trial,

having first taken the oath which was administered to him by the clerk. On that trial the defendant testified that he went with Mrs. Hough from her house to the peach orchard on her premises near Bruceville, and that when they reached the peach orchard Mrs. Hough told him that she wanted carnal intercourse with him, and that he told her in reply that he would do the best he could, and that thereupon he and she had carnal intercourse with each other in the said peach orchard. He said that he went to Mrs. Hough's place that evening by the main Bruceville road, passing the Abernathy house, and that the act of copulation took place about sun down.

Charles Lewis testified, for the State, that he was a member of the jury which tried the Simmons v. Simmons divorce suit in October, 1887. Defendant testified as a witness for the respondent on that trial, having first been sworn. As well as the witness could remember, the oath was administered to the defendant by Mr. Beasley, the district clerk. Witness might be mistaken as to whether the oath was administered by Beasley or his deputy, but at all events the defendant was sworn. He testified, in substance, that he had carnal intercourse with Mrs. Hough in the peach orchard on her premises about sun down on the evening of September 9, 1887.

Mrs. Abernathy was the next witness for the State. She testified that she lived in a house on the premises of Mrs. Nettie Hough, near Bruceville, in McLennan county, Texas, and lived in the said house on the ninth day of September, 1887. The witness's daughter Annie visited Mrs. Hough's on the said September 9, going to the house early in the morning, and returning home about mid-afternoon. Just before sundown on that evening, the witness saw Mrs. Whaley and Mrs. Leavett leave Mrs. Hough's house and go from there towards Bruceville, traveling the regular main road from Mrs. Hough's to Bruceville. To reach the said Bruceville road, the said ladies had to and did pass the witness's house at a distance of about two hundred yards. Just after Mrs. Whaley and Mrs. Leavett passed witness's house, which was about sundown, the witness saw a wagon going through Dr. Bruce's pasture towards Mrs. Hough's house. She could not recognize the wagon, but it was drawn by the same horses which, attached to Mrs. Hough's wagon, N. C. Simmons drove off in the morning, and the witness therefore presumed that that wagon was Mrs. Hough's wagon, and that the person driving it was N. C. Simmons. No

man went to Mrs. Hough's house, on the said September 9, from the direction of Bruceville. No person could have gone to Mrs. Hough's from Bruceville over the Bruceville road, without passing witness's house, and being seen by the witness. The witness was familiar with Mrs. Hough's reputation for chastity in the community of her residence. It was and always had been good.

Mrs. Whaley testified, for the State, that she lived near Bruceville, in McLennan county, and lived there during the year 1887. On the morning of September 9, 1887, the witness and Mrs. Leavett went to the house of Mrs. Hough, and spent the day. They left Mrs. Hough's house after sundown, and returned to their houses over the direct route from Mrs. Hough's to Bruceville, passing the house of Mrs. Abernathy en route. The Bruceville and Mooresville road, which is the road referred to by previous witnesses as the main Bruceville road, passed Mrs. Hough's field at a distance of about one hundred yards. A cross road led from it to a gate in Mrs. Hough's field, and thence to Mrs. Hough's house via the Abernathy house, which it passes at a distance of about two hundred yards. The route indicated was the direct route from Mrs. Hough's to Bruceville, and was the one traveled by Mrs. Leavett and the witness on the evening in question. The Bruceville and Mooresville road, from Mrs. Hough's field to a point near Bruceville, traversed a lane. The witness and Mrs. Leavett did not meet a single person, male or female, between Mrs. Hough's place and Bruceville on the said evening. The reputation of Mrs. Hough for chastity was good.

Doctor Bruce testified, for the State, that he was present and heard the testimony delivered upon the trial of the Simmons *v.* Simmons divorce case, in October, 1887. The defendant was sworn as a witness for the respondent in that case, the oath being administered by District Clerk Beasley. On that trial the defendant testified that he went to the house of Mrs. Hough, near sundown on the evening of September 9, 1887, and, at the request of Mrs. Hough, went with her from the house to the peach orchard on the said premises, where he had sexual connection with her. A person could go from Bruceville to Mrs. Hough's residence without passing by Mrs. Abernathy's house in the field, by traveling the Bruceville and Mooresville road to a point beyond Mrs. Hough's field, and then going to the said house across an open prairie. That route was three-quarters of

a mile farther than the route by the main road, which passed Mrs. Abernathy's house, and the defendant testified positively that, in going to Mrs. Hough's house, he traveled the said main road. The witness saw the defendant frequently before the trial of the divorce case, but did not know where he was afterwards. Mrs. Hough's reputation for virtue and chastity, in the community of her residence, was good.

Mrs. Leavett testified, for the State, that she lived in McLennan county, Texas, between the villages of Eddy and Bruceville. In company with Mrs. Whaley, she spent the day on September 9, 1887, with Mrs. Hough, at her residence near Bruceville, Texas, arriving at the said house about nine o'clock in the morning. They left Mrs. Hough's house about sundown, and returned to Bruceville over the main road, which passed by the Abernathy house. That road traversed a lane until it reached a point near Bruceville. They met no person on their way from Mrs. Hough's to Bruceville. Mrs. Hough's reputation for virtue and chastity was good, and had never been assailed prior to the trial of the divorce suit in October, 1887.

M. C. H. Park was the next witness for the State. He testified that he was an attorney at law, and attended the October term, 1887, of the District Court of McLennan County, and was present, and heard the testimony adduced on the trial of the Simmons v. Simmons divorce case. The defendant was sworn and testified as a witness for the respondent in that case. He testified, in substance, that he went to the house of Mrs. Hough, on the evening of September 9, 1887, going to said house over the main Bruceville road; that he arrived at that house a little before sundown, and that, after remaining in the house for a short time with Mrs. Hough, she invited him to go with her to the peach orchard, and after they got to the peach orchard she asked him to act the part of a man to her, and that he accordingly had carnal connection with her, finishing the act of copulation about sun down.

Deputy Sheriff Dan Ford testified, for the State, that he summoned the witnesses in the Simmons v. Simmons divorce case, but had no subpoena for the defendant as a witness in that case. Witness was unable to say whether or not the defendant was in McLennan county prior to the trial of the divorce suit. A warrant for the arrest of the defendant was delivered to the witness a day or two after the trial of the said divorce suit, but witness failed to find defendant in McLennan county.

Will Lyons testified, for the State, that he had known the defendant since December 2, 1887. Defendant was arrested for this offense at witness's house in Hunt county. Witness knew and introduced the defendant by the name of Winchey, which defendant said was a part of his name. Witness knew that defendant was known by the name of Simmons in his, witness's, neighborhood, and he heard the defendant called Simmons after his arrest. In explanation of his assumed name, the defendant told witness that he was called Winchey at home.

W. T. Harris, for the State, testified that he was sheriff of McLennan county, and held that office in October, 1887. A capias for the arrest of the defendant for this offense was placed in the hands of the witness soon after the trial of the Simmons v. Simmons divorce case, but was not executed by witness because he could not find the defendant in McLennan county. Upon information which subsequently came to the witness, he sent his deputy, Percy McGee, to Hunt county, and got the defendant. Immediately after the close of the Simmons v. Simmons divorce case, the defendant came to witness and told witness that he had heard that witness had some person watching him, and that, if it was so, witness must have him watched either by an officer or a gentleman, or he would not submit to it. Witness assured the defendant that he, witness, had nobody watching him, which, as a matter of fact, was true. Another person, however, did have a man watching defendant.

Forrest Thompson testified, for the State, that he was in the court house when the Simmons v. Simmons divorce case was tried, and saw District Clerk Beasley when he administered, and the defendant when he took, the oath as a witness for the respondent in that case. Witness was familiar with the topography of the country contiguous to Bruceville and to the residence of Mrs. Nettie Hough. The most direct and shortest route from Bruceville to Mrs. Hough's residence was over the main Bruceville and Mooresville road to a point near the Threadgill house, where a cross road led into Mrs Hough's field, and through it to her residence via the Abernathy house. The cross road mentioned is used only in going from the Bruceville road to the houses of Mrs. Abernathy and Mrs. Hough. There was a spring on the Bruceville and Mooresville road, about a quarter of a mile beyond the Threadgill house. A person could go from Bruceville to Mrs. Hough's house by going on to this spring, instead of turning off at the cross road, and

then going across an open prairie to the back lot near Mrs. Hough's house; but that route was at least three-quarters of a mile further than the main route described. Stock water was very scarce in the vicinity of Bruceville in September, 1887, and there was none to be had between Bruceville and the Threadgill or Hough houses. Witness saw the defendant on the day that he testified in the Simmons v. Simmons divorce case, but did not see him during the several days preceding that day, nor did he see him again until after his arrest.

Deputy Sheriff Percy McGee testified, for the State, that late in 1887 the sheriff of McLennan county sent him to Hunt county to get the defendant. He found the defendant in jail in Greenville, and brought him to Waco.

The State closed.

Joseph Lockard was the first witness for the defense. He testified that, late one evening, early in September, 1887, he met the defendant at the spring on the Bruceville and Mooresville road about a quarter of a mile distant from the house of Mrs. Nettie Hough. The defendant, who was on horseback, told the witness that he was then going to Mrs. Hough's residence. The sun was then about down. In going from the said spring to Mrs. Hough's house, the defendant would cross a small open prairie and reach the premises at the back lot, near the house. The witness could not fix the date of that meeting with the defendant at the spring, but it was a short time before he heard of the trouble between Mrs. Hough and her then husband, N. C. Simmons, and it was the only time during the said September that witness met defendant at the said spring.

George Lowry testified, for the defense, that he, witness, and D. P. Simmons, the brother of the defendant, were partners in the grocery business, which they carried on in the town of Bruceville, McLennan county. Defendant spent the night of September 8, 1887, with the witness in Bruceville. He was with the witness in Bruceville all of the next day until late in the afternoon, when he left Bruceville, going towards Mrs. Hough's house, where, as he told witness, he was going to spend the night. The witness was positive about the date, because defendant bought some lemons and ice from him on the day before he left Bruceville to go to Mrs. Hough's house, and the charge on the books shows that transaction to have occurred on September 8, 1887. It was nearly sun down when defendant left Bruceville to go to Mrs. Hough's house on the evening of Sep-

tember 9. The spring mentioned by previous witnesses was on the Bruceville and Mooresville road, about a quarter of a mile beyond the corner of the Bruce place, at which corner a cross road leaves the said road and leads into Mrs. Hough's field, and through, via the Abernathy house to Mrs. Hough's house. To go to Mrs. Hough's house from Bruceville via the said spring, one would go from the spring across a small open prairie and reach the Hough premises at the gate of the back lot, that route being a half or three-quarters of a mile further than by the Abernathy house. Stock water was scarce in September, 1887, and there was none to be had on the direct or short route via the Abernathy house, between Bruceville and Mrs. Hough's house. Defendant left Bruceville to go to Mrs. Hough's on horseback. The defendant was in Dallas county, working for a man named Carter, for some time before the trial of the Simmons v. Simmons divorce suit, and witness went to Dallas county to get him to attend the trial of the divorce suit as a witness for the respondent.

Mr. Orr testified, for the defense, that he was the proprietor of a cotton gin in the town of Eddy, in McLennan county, which was about three miles and a half distant from Mrs. Hough's residence. On the eighth day of September, 1887, N. C. Simmons, the father of the defendant, and then the husband of Nettie Hough, brought a bale of seed cotton to witness's gin to be ginned. He remained in Eddy all of said day, and started home between sun down and dark, having a bale of cotton and the seed therefrom in his wagon. Witness was not absolutely certain whether it was on September 8, or September 9, when N. C. Simmons came to his gin as stated, but knew that it was one of those days, and thought it was the eighth. He could not tell the hour at which N. C. Simmons left the gin to go back to the Hough place where he then lived, but knew that it was after sundown.

Bob Whaley testified, for the defense, that he lived in the town of Eddy in September, 1887, and then ran a saloon. At about sunset, on the evening of either the eighth or ninth of September, 1887, N. C. Simmons, the father of the defendant, came into witness's saloon and bought two bottles of beer, and shortly afterwards left in his wagon towards the house of Mrs. Nettie Hough, where he then lived. N. C. Simmons at that time had a bale of cotton in his wagon.

N. C. Simmons testified, for the defense, that he was the

father of the defendant. On the morning of the ninth day of September, 1887, the witness left his home near Bruceville,—now known as the Mrs. Nettie Hough residence,—in a two horse wagon, and went to his son's place, where he got a bale of seed cotton. Thence he went to Orr's gin in Eddy and had the cotton ginned. He bought two bottles of beer at Bob Whaley's saloon in Eddy at about sundown, and about dark, with his bale of cotton, and the seed therefrom, in his wagon, he left Eddy and drove home over the private way through Doctor Bruce's pasture. He reached home about eight o'clock on that night, and found the defendant at the house. Defendant spent that night (September 9, 1887) at witness's (now Mrs. Hough's) residence, and left on the next morning. While at his house on the said night, the defendant told the witness that he had been to Lorena on that day, and that, in coming from Lorena to the said house, he met Joe Lockard at the spring on the Bruceville and Mooresville road. The witness knew Tom Smith, who testified on the trial of the Simmons v. Simmons divorce case. The said Tom Smith was now in the penitentiary under conviction for perjury committed on that trial. The witness was now under indictment for subornation of perjury in connection with the said testimony of the said Smith. The witness never procured nor in any way attempted to induce Tom Smith to testify falsely on the said trial, or on any other trial, nor was he now aware that Smith did testify falsely on that trial.

The defense closed and the State recalled Forrest Thompson and Hand Threadgill, who testified that they had known the defendant nearly all of his life, and had never heard him called by the name of Winchey.

The defendant's application for continuance which, in connection with the motion for new trial, is the subject matter of the rulings of this court, reads as follows:

"And now comes R. L. Simmons, the defendant in the above numbered and entitled cause, and on his oath says that he can not safely go to trial at this term of the court for want of the testimony of Robert Carter, who resides in Dallas county, Texas, Ernest Cox, who resides in Webb county, Texas, and Finley Nelson, who resides in Parker county, Texas. Affiant says that the above mentioned witnesses are not now in court, but are absent. Affiant says that the following diligence has been used by affiant to secure the attendance of said witnesses at this term of the court and now on this day: On April 7,

1888, affiant legally applied for and obtained from the District Clerk of McLennan county an attachment for the said Robert Carter, addressed to the sheriff or any constable of Dallas county, Texas; an attachment for the said Ernest Cox, addressed to the sheriff or any constable of Webb county, Texas, and an attachment for the said Finley Nelson, addressed to the sheriff or any constable of Parker county, Texas. Affiant says that said attachments so obtained as aforesaid on the seventh day of April, 1888, were placed in letter envelopes, and addressed as follows: The one for Robert Carter, to the sheriff of Dallas county, at Dallas, Texas; the one for Ernest Cox, to the sheriff of Webb county, at Laredo, Texas, and the one for Finley Nelson, to the sheriff of Parker county, at Weatherford, Texas. Affiant says that on each and all of the envelopes addressed as aforesaid, the proper and necessary postage stamps were placed, and the said attachments so enclosed and directed were, on the said seventh day of April, 1888, deposited in the United States mail, at the postoffice in Waco, Texas. And affiant says that each and all of said attachments were made returnable on this tenth day of May, 1888; and that the attachment for the said Ernest Cox was returned unexecuted, the said Ernest Cox not being found in Webb county, Texas, and said attachment is now among the papers in this case; that the attachment for the said Finley Nelson was soon returned to the clerk of this court, and is now among the papers in this cause, but there is no return upon the same as to why the same was not executed or whether the same was executed, and affiant has no knowledge of when said attachment was placed among the papers in this cause, or why there is no return upon the same, or why said attachment was not executed. Affiant says that the said attachment against the said Robert Carter is not now amongst the papers in this cause, and affiant has no knowledge of why said last mentioned attachment has not been returned, or as to why the said Robert Carter is not now present in court.

"Affiant says that the evidence of the said witnesses is material to the defense in this cause, and that he expects to prove the following facts: By the witness Robert Carter he expects to prove that when he, affiant, came from Dallas county to Mc-Lennan county, Texas, to testify as a witness in the cause in which the perjury is herein charged to have been committed, that affiant was then in the employ of the said witness; that when affiant so left Dallas county, he, affiant, left his horse and

saddle in the charge of the said witness; that, when affiant had testified in the cause in which he is charged to have committed perjury, he, affiant, returned to the house of the said witness, and continued for some time thereafter in the employ of said witness, and that affiant continued so employed until the said witness had no further work at which he wished to employ the affiant. Affiant says that the testimony of the witness Robert Carter is and becomes material from the fact that in this cause the State intends to show, and has witnesses subpœnaed to show, that, after affiant had testified in the cause in which he is charged to have committed perjury, that then he, affiant, left the vicinity, and went to a distant part of the State, and endeavored by constant changes to avoid arrest and evade a trial on this charge.

"Affiant expects to prove by the witness Ernest Cox that, on the evening of the day upon which this affiant testified that he had sexual connection with Mrs. Nettie Hough on the premises near her residence near Bruceville, Texas, and to the fact of which connection affiant testified in the District Court of Mc-Lennan county, Texas, and which said testimony is now and herein charged to be perjury, he, the said witness, met affiant in the vicinity of the said residence near night, and that affiant was going towards said residence, and told witness that he was going to said residence after some cattle and would spend the night there. Affiant says this testimony becomes material because the State will attempt to show, and has witnesses present to testify, that affiant did not come to that residence that evening, and that no man except the husband of Mrs. Nettie Hough was on the premises of Mrs. Nettie Hough on that evening; and the State will, by this testimony, attempt to show the falsity of the testimony of affiant and establish perjury.

"Affiant expects to prove by the said witness Finley Nelson that he met N. C. Simmons, husband of Mrs. Nettie Hough, after dark on the evening of the day when affiant testified that said sexual connection did occur, which said testimony is now charged as perjury; and said witness will testify that the said N. C. Simmons was, at the time witness met him, on his way towards the residence of Mrs. Nettie Hough, and that the said N. C. Simmons was then coming from the direction of Eddy. Affiant says that the testimony of the said witness Finley Nelson is and becomes material from the fact that this affiant's testimony, charged herein as perjury, to the effect that said

sexual connection occurred about dark on said evening, and before the arrival of N. C. Simmons at said residence or premises, and the State will attempt to show, and have witnesses to testify, that at said time Mrs. Nettie Hough was with her husband and that he, her husband, the said N. C. Simmons, was then present at her residence; and the State will attempt so to show the falsity of the testimony of the affiant.

"Affiant says that none of the said witnesses are absent by the consent or procurement of the affiant, and that this, his first application for continuance in this cause, is not made for delay. Affiant says that all the testimony of the aforementioned witnesses is true, and that there is no reasonable expectation that the attendance of the witnesses can be secured during the present term of the court by a postponement of the trial to some future day of the term."

*Pearre & Boynton,* for the appellant: The court erred in overruling defendant's motion for a new trial because the verdict is unsupported by the evidence, there being no evidence strongly corroborating the testimony of Mrs. Nettie Hough as to the falsity of defendant's statements under oath.

The perjury charged was appellant's alleged false testimony as to the fact of sexual intercourse between himself and Mrs. Nettie Hough. Mrs. Nettie Hough swore that his statements under oath in regard to this matter were false. The only attempts at corroboration were by two lines of negative proof: 1. That none of the State's witnesses saw appellant going toward the Mrs. Hough's premises on the said ninth day of September, 1887. 2. That there was not time for said intercourse between the departure of Mrs. Whaley and Mrs. Leavett from said premises and the arrival of N. C. Simmons. As to these collateral circumstances appellant showed: 1. That he left Bruceville late in the evening, saying he was going to the premises of Mrs. Nettie Hough; that he was near her premises at a spring on the Mooresville road at a late hour, and that N. C. Simmons found him at said premises after dark on said day. He also showed that Simmons did not arrive at said premises on said day until a late hour. He also showed by State's and defendant's witnesses that, if one went from Bruceville to Mrs. Nettie Hough's premises via said spring on the Mooresville road, he would not pass the Abernathy house, and would not, for the whole distance, travel the route taken by Mrs. Whaley

and Mrs. Leavett in going from said premises to Bruceville on said day. Excepting Mrs. Hough, no one testifies as to what was going on in the peach orchard at the time at which appellant places the sexual intercourse; no one testifies to the whereabouts of either appellant or Mrs. Nettie Hough at that hour. (Code Crim. Proc., Art. 746; Gabrielsky v. The State, 13 Texas Ct. App., 428; Gandy v. The State, 36 N. W. Rep., 817.)

The appellant, without discussing the court's action in over-ruling the motion for a continuance, urges that when the matter came up for a second consideration, on the motion for a new trial, that motion should have been granted. The only issue in this case was as to the truth or falsity of the testimony assigned as perjury. Mrs. Hough swore positively that it was false, and the State attempted to corroborate her testimony by proving independent circumstances to establish two facts: 1. That appellant was not seen to go to said premises on September 9, 1887; and, 2, the return of N. C. Simmons immediately after the departure of Mrs. Hough's lady friends and near sun set on said day. To meet this, and concerning the first point, appellant introduced testimony to show that he did go to said premises on said day; and in explanation of his not meeting the ladies who visited Mrs. Hough, he produced testimony to prove that his route was not the same as the one which they traveled on said day. He was obliged to prove these facts by those who saw him leave Bruceville, met him on the way, and saw him on said premises. Ernest Cox, one of the absent witnesses, would have testified to meeting appellant on said day in the vicinity of said premises, and at a different place from where any other witness saw him. In regard to the second point, two witnesses saw N. C. Simmons after sun down on said day at Eddy, at least three miles from said premises, and Finley Nelson, another absent witness, would have testified to meeting N. C. Simmons after dark on said day between Eddy and Mrs. Hough's residence. We maintain that this absent testimony was material, and by both the weight and character of the testimony introduced upon the trial as to these points, was shown to be probably true.

The record in the divorce suit was admitted in evidence over defendant's objection, and in the charge of the court the jury were directed that it could only be considered to show that "such a case was on trial and the issues arising thereon so far as described in the indictment in this case." The record so in-

troduced consisted of the original petition, supplemental peti-
tion, original answer, supplemental answer and the decree.
Now if this evidence was only admissible to prove that such a
case was pending, and the issues of fact upon which perjury is
charged by this indictment to have been committed, appellant
urges that it was grave error to admit in evidence the original
petition and original answer in said divorce suit; neither of
which in any way refer to this issue of fact, but both of these
pleadings are filled with grave issues between Mrs. Hough and
N. C. Simmons, opposing witnesses in this cause. Then the
decree was admitted, and so the jury in this cause were in-
formed how the jury in the divorce suit decided the question of
the truth or falsity of defendant's evidence. All of this irrele-
vant testimony was gravely prejudicial to appellant; and this
in a cause which appealed to the strongest prejudices of a jury,
and which demanded for the defendant the strictest possible
protection from such injuries.

In his closing argument the county attorney again strongly
appealed to the prejudices of the jury by urging upon them ap-
pellant's conviction because former juries had held his testi-
mony untrue, and he referred them to the decree in the divorce
suit in evidence, to prove this fact. To this defendant at once
objected and the court partially withdrew the remarks.

But it is mainly on the fifth and eighth assignments of error
that appellant rests his appeal. The first of these concerns a
portion of the court's charge, duly excepted to upon the trial.
After explaining to the jury the meaning of the term "credible
witness," and giving to them the law of circumstantial evidence
to be applied to the corroborating testimony, the court adds the
following paragraph: "Such corroboration may be circum-
stantial evidence consisting of proof of independent facts, if
such facts together tend to establish the falsity of the oath, and
together strongly corroborate the testimony of one witness, if,
in your opinion, she be credible, and has testified to the falsity
of the defendant's statements, if made under oath, as set out in
the indictment." In this charge appellant says there is grave
error, because it does not require that the circumstantial evi-
dence to warrant a conviction should strongly corroborate the
witness as to the falsity of defendant's statements under oath.
Now, while the law is correctly stated in the abstract in other
portions of the charge, it is stated as above when applicable to

the testimony. Mrs. Hough was the witness who testified to the falsity of defendant's statements, she also testified to every fact testified to by other witnesses, and by the proof of which the State sought to corroborate her testimeny. Now she did testify as to the falsity of defendant's statements, and she was strongly corroborated (in part of her testimony) by the proof of independent facts, and this was all the court's charge required. But she was only corroborated strongly as to that portion of her testimony wherein she herself testified to these independent facts, and not at all in her testimony wherein she testified to the falsity of defendant's statements under oath; while the statute requires that she be "corroborated strongly by other evidence as to the falsity of defendant's statements under oath." (Code Crim. Proc., art. 746.)

The portion of the charge in question is approved by this court in Hernandez v. The State, 18 Texas Ct. App., 134; but in that case the one witness who testified to the falsity of defendant's statements testified to no other fact, so the charge was clearly correct in that case. But in this case the "one witness" testified to the falsity and also to all of the "corroborating evidence," so, to simply require "strong corroboration" of her testimony by other witnesses was giving to the jury greater latitude to convict than the law allows.

The eighth assignment questions the sufficiency of the evidence. The law requires that the one witness who testifies positively to the perjury be strongly corroborated as to the falsity of defendant's statements under oath. Now in this case the perjury charged was appellant's testimony as to the sexual intercourse which he claimed occurred between Mrs. Nettie Hough and himself on her premises on September 9, 1887. Mrs. Hough swore positively that this testimony was false; she then testified to a line of independent circumstances, viz., that appellant was not on her premises at any time on said day, and that Mrs. Leavett and Mrs. Whaley spent that day with her; that they departed for Bruceville shortly before sun down; that these ladies took the road leading by Mrs. Abernathy's, and that N. C. Simmons returned home within ten minutes after they left. Now by giving this independent testimony Mrs. Hough could not corroborate her own testimony as to the falsity of defendant's statements under oath. (Gabrielsky v. The State, 13 Texas Ct. App., 428). The State was therefore required to introduce other evidence to corroborate her, and in answer to this demand

they introduced Mrs. Leavett and Mrs. Whaley, who testified to spending September 9, 1887, at Mrs. Hough's, to leaving there for Bruceville near sun set on said day, and to meeting no one on their way. They also showed by Mrs. Abernathy that she did not see appellant pass her house on that day, that she did not see the two ladies pass going towards Bruceville near sun set on said day, and that about the same time she saw a team coming through Doctor Bruce's pasture towards Mrs. Hough's, which she took to be a team driven by N. C. Simmons. Now all of this testimony which even tends to prove the falsity of the oath is negative testimony, and these three witnesses strongly corroborated Mrs. Hough's testimony only in that portion wherein she testified to these same independent facts, and not at all in her testimony as to the falsity of defendant's statements under oath.

But, insufficient as the evidence then was, the appellant introduced witness Lockard, and by positive testimony explained away the evidence of Mrs. Whaley, Mrs. Leavett and Mrs. Abernathy in so far as their testimony tended to show that appellant was not on said premises on said day, by showing that he traveled a route from Bruceville to said premises which did not lead by the Abernathy place, and which for a part of the way was different from the one selected by Mrs. Leavett and Mrs. Whaley in going home on said day. Again, N. C. Simmons testified positively that he did not arrive on said premises until after dark on said day, and that he found appellant there when he arrived. He was corroborated by two witnesses who testified to seeing him three miles from his home at an hour later than the departure of said ladies from Mrs. Hough's.

Aside from Mrs. Hough's testimony, the evidence preponderates in appellant's favor, and, even without considering the explanation offered by the testimony for the defense, the evidence wholly fails to strongly corroborate Mrs. Hough's testimony as to the falsity of defendant's statements under oath; and, therefore, taking only the criminating evidence into consideration, it is insufficient to support a conviction.

*W. L. Davidson*, Assistant Attorney General, for the State.

WILLSON, JUDGE. We are of the opinion that the testimony of the absent witnesses, as set forth in the application of the defendant for a continuance, is, in view of the evidence adduced

on the trial, both material and probably true. It would tend strongly to destroy the force of the circumstantial testimony adduced by the State in corroboration of the testimony of Mrs. Hough, who was the only witness that testified to the falsity of the statements of defendant upon which perjury is assigned. Carter's testimony would explain, at least would tend to explain, why defendant left McLennan county soon after testifying in the divorce suit, and would tend to show that defendant had not fled from McLennan county to escape this prosecution. The testimony of the other two witnesses would tend to contradict and disprove the theory of the State that the defendant was not at Mrs. Hough's house, nor on her premises, at the time he testified he had sexual intercourse with her, and would tend to explain the most potent, in fact the only, evidence corroborating Mrs. Hough, in a manner that might render such corroborating evidence, in the estimation of a jury, of no force or weight whatever.

It is true that defendant's application for a continuance does not show legal diligence to obtain the testimony of the absent witnesses, and because it was in this respect insufficient, the the court did not err in refusing to grant the continuance. But in reviewing the matter on defendant's motion for a new trial, the question of diligence should have been disregarded, and the only inquiry in the mind of the court should have been, is the absent testimony material to the defendant, and is it probably true? If the evidence adduced on the trial demands an affirmative answer to such inquiry, a new trial should be granted the defendant, notwithstanding his application for a continuance was properly refused. (Willson's Crim. Stats., sec. 2186; McCline v. The State, 25 Texas Ct. App., 247; Cordway v. The State, Id., 405.) Such answer is, in our opinion, demanded by the evidence, and the court erred in not granting the defendant a new trial.

We find no material error in the charge of the court, nor in any ruling or action of the court except the one above mentioned. We shall not discuss the sufficiency of the evidence to sustain the conviction. On another trial the facts proved may differ materially from those now before us.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Opinion delivered December 5, 1888.